# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

Robert Caldwell,

    Plaintiff,

    v.

Lieutenant Creasy,
correctional officer,

    Defendant.

Case No. 3:14-CV-1503-JVB-JEM

## OPINION AND ORDER

    Plaintiff, Robert Caldwell, a prisoner in the Indiana Department of Correction system, sued three staff members of the Westville Correctional Facility under 42 U.S.C. § 1983 for violation of his rights under the 8th and 14th Amendments to the U.S. Constitution. Caldwell claims that the staff's indifference to his safety and denial of his request to be separated from certain other prisoners resulted in his serious physical injury. Defendant Lieutenant Creasy moved for summary judgment, citing the affirmative defense that Caldwell failed to exhaust administrative remedies before bringing a lawsuit in federal court as required by the Prisoner Litigation Reform Act, 42 U.S.C § 1997e. Specifically, Lieutenant Creasy insists that he was never named nor otherwise referenced in the prison's grievance process, and therefore cannot be named in Caldwell's federal lawsuit. The Court denies the motion for summary judgment.

## A. Summary Judgment Standard

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead

to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B. Summary of Events**

Caldwell is a prisoner at the Westville Correctional Facility and a self-described member of the white supremacist Dirty White Boyz (DWB) prison gang. On November 28, 2013, when Caldwell discovered he was moving to a section of the prison with a significant black prisoner population, he raised his safety concerns to several prison staff. Caldwell was not immediately removed from his new dorm assignment and the next day, he was attacked by his fellow prisoners. The attackers broke his hand and injured his head, requiring 16 stitches.

Unhappy with the prison staff's initial response to his verbal, informal complaint about his concerns with his housing relocation, Caldwell used the Indiana Department of Corrections Offender Grievance Process to file a Level I Formal Grievance and, later, appealed the prison's response with a Level II Formal Grievance before filing suit in this court. (DE 41-B, DE 41-C).

In Grievance Form #45471 (Case No. 79968), dated December 7, 2013, Caldwell cites the subject of his grievance as "Housing Placement" and the attack by fellow prisoners as a result of what he perceives to be the prison staff's unprofessional behavior. Caldwell cites "SGT's and Staff" as the personnel he contacted in his original informal complaint process and specifically mentions a "CO" (corrections officer), a "SGT Orr" and a "they" in reference to prison staff with whom he interacted during his placement in the new dorm. (DE 1-1). The majority of his complaint addresses SGT Orr's final response to his requests for help prior to his beating. In

Caldwell's complaint filed with this court, in addition to naming Officer Orr, Caldwell also names Superintendent Lavenhagen and Lieutenant Creasy as Defendants.[1]

There is no dispute whether Caldwell filed the appropriate paperwork or met administrative deadlines as required by the Indiana Department of Corrections Offender Grievance Process with regards to "Officer Orr." The issue here is whether Caldwell's Level I and Level II Formal Grievances about the attack on November 29 adequately identify Lt. Creasy prior to naming him in this federal lawsuit. In other words, the question before the Court is whether Caldwell exhausted his administrative remedies before suing Creasy.

**C. Analysis**

**1.** *Prison Litigation Reform Act Standards and the Indiana Department of Corrections Offender Grievance Process*

Under the Prison Litigation Reform Act of 1995, prisoners are prohibited from filing federal lawsuits regarding prison conditions unless they have first exhausted all administrative remedies available to them. 42 U.S.C.S. §§ 1997e(a). It was left to each state to develop their own administrative grievance process within their correctional facilities. Section 1997e(a)'s exhaustion of administrative remedies requirement is designed "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . ." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Similarly, in the Seventh Circuit, "a grievant is not required to know the name of the prison employee whom he is complaining about — often he will not know the employee's name — and so it is enough if he 'include[s] as much descriptive information

---

[1] Upon screening of Caldwell's case pursuant to 28 U.S.C. § 1915A(b), the Court dismissed all claims against Superintendent Mark Lavenhagen.

4

about the individual as possible,' § 504.810(b)." *Roberts v. Neal*, 745 F.3d 232, 235--236 (7th Cir. 2014).

The Indiana Department of Corrections Offender Grievance Process is a three-step administrative procedure: The first step requires prisoners to informally (verbally) address their issues with a designated staff member. If the issue is not resolved to their satisfaction, the prisoners must then file an official grievance form. Third, and finally, if the prisoners remain dissatisfied with the correction facility's response, they may appeal their grievance to the next higher authority. Only after taking all three steps, may Indiana prisoners file a lawsuit against the prison facility or its staff.

**2.** *Caldwell's Grievance Process*

In this case, Caldwell satisfied the intent of the grievance process. Caldwell provided sufficient information, including date, time, location and details of his attack, in Grievance Form #45471 to indicate his dissatisfaction that prison staff failed to safeguard him from other prisoners; prison officials received adequate information and opportunity to determine which staff members may have been on duty and approached by Caldwell in the short period between his arrival at the new dorm and the attack by fellow prisoners. During the grievance process, it came to light that there was no corrections officer currently employed at the prison with the same name (Orr or Orth) as that provided by Caldwell. A prisoner's complaint, however, cannot be denied, if he fails to get all details of the personnel involved. There is no requirement in either the Prison Reform Litigation Act or the Indiana Department of Corrections Offender Grievance Process that all prison staff officers involved be correctly named — or named at all — at the time the grievance is filed. As stated above, the purpose of the Prison Litigation Reform Act is to put

prison officials on notice of a specific problem so that they may address it at the lowest level without requiring court involvement if it can be addressed locally; the purpose of the Prison Litigation Reform Act is not to serve as some sort of legal notice to any specific prison official that he may be sued. Put another way, the requirement to exhaust administrative remedies is intended to benefit the federal courts and the prison systems and the prisoners; ideally it reduces the numbers of lawsuits brought by prisoners by ensuring the problem is addressed at the lowest levels possible; this saves time and expense for all parties involved.

This case is distinguished from *Roberts v. Neal*, 745 F.3d 232: There the Court found that prisoner Roberts failed to exhaust his administrative remedies before suing two of the named defendants, Alvin and Davis. Specifically, in the grievance filed with prison officials, Roberts failed to adequately identify two of defendants named in his federal lawsuit when he first filed his grievance with the prison. Roberts provided neither a name, duty position nor location that might alert a grievance officer of the defendants' identities or involvement with his case. In a subsequent lawsuit, he named Alvis, a non-medical, receiving officer, despite the fact that his grievance specifically regarded his medical care at a certain prison facility. In addition, he attempted to sue a prison nurse who worked at a different prison facility than where his grievance stated he was unhappy with his medical care.

Here, however, although Caldwell failed to name in his grievance all individuals whom he notified about his safety concerns, he did provide prison officials with clear dates, timelines and identification of specific phases of his relocation and in-processing so that they could determine which personnel would came into contact with Caldwell prior to his assault. Additionally, Caldwell cited in his grievance the duty positions of those with whom he interacted: the "SGTs and Staff on Duty"; the prison employees that placed him on "3 Dorm" at 3:3 am on November,

29, 2013; the prison employee(s) working in "the [officers'] cage"; the "CO"; and, the "dorm officer." (DE 1A). This combination of facts meets the exhaustion of administrative procedures burden placed on Caldwell. The fact that prison officials may or may not have put Lt. Creasy on notice about Caldwell's grievance cannot be held against Caldwell.

**D. Conclusion**

Federal Rule of Civil Procedure 56 requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In the cases where a motion for summary judgment is based on the affirmative defense that a prisoner failed to exhaust his administrative remedies, the moving party incurs the burden to establish the absence of disputed issues of material facts concerning the prisoner's failure to pursue those remedies. Defendant Creasy fails to establish his affirmative defense in this case. Therefore, the Court DENIES his Motion for Summary Judgment (DE 41).

SO ORDERED on July 16, 2015.

                                                s/ Joseph S. Van Bokkelen
                                                Joseph S. Van Bokkelen
                                                United States District Judge